**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| VALARIS PLC, *et al.*,[1] | ) ) | Case No. 20-34114 (MI) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' MOTION TO EXTEND THE EXCLUSIVITY PERIODS
TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**
>
> **A hearing will be conducted on this matter on January 11, 2021, at 9:30 A.M., prevailing Central Time, in Courtroom 404, 4th Floor, 515 Rusk Avenue, Houston, TX 77002. You may participate in the hearing by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554.**
>
> **You may view video via GOTOMEETING. To use GOTOMEETING, the Court recommends that you download the free GOTOMEETING application. To connect, you should enter the meeting code "JUDGEISGUR" in the GOTOMEETING app or click the link on Judge Isgur's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judge's Procedures," then "View Home Page" for Judge Isgur. Under "Electronic Appearance" select "Click here to Submit Electronic Appearance." Select the case name, complete the required fields, and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested, you must respond in writing, specifically answering each paragraph of this pleading. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.stretto.com/Valaris. The location of Debtor Ensco Incorporated's principal place of business and the Debtors' service address in these chapter 11 cases is 5847 San Felipe Street, Suite 3300, Houston, Texas 77057.

KE 72499599

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):[2]

### Preliminary Statement

1. The Debtors request that the Court grant a 120-day extension of the exclusivity periods. Before the Petition Date, following months of intensive negotiations, the Debtors entered into a Restructuring Support Agreement (the "Restructuring Support Agreement") that provides for a value-maximizing restructuring transaction. The Restructuring Support Agreement sets forth the terms of a transaction that would fully equitize the Debtors' $7.1 billion of prepetition funded debt, provide a $500 million fully-funded exit facility, and set the Debtors on a path to emerge from bankruptcy in early 2021. Since the Petition Date, the Debtors have continued to build consensus for the deal reflected in the Restructuring Support Agreement, resulting in holders of an additional $1.5 billion of bond debt supporting the Debtors' restructuring efforts, amounting to a total of 72 percent of bonds having committed to supporting the Plan.

2. In the approximately three months since the Petition Date, the Debtors and their advisors have made substantial progress towards achieving their goals. The Debtors smoothly transitioned into chapter 11 and stabilized their business operations, obtained Court approval of important procedural and operational relief (including $500 million of debtor-in-possession financing), rejected burdensome leases of nonresidential real property, filed their schedules and

---

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in the *Declaration of Jonathan Baksht, Executive Vice President and Chief Financial Officer of Valaris plc, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on August 19, 2020 (the "Petition Date"). Capitalized terms used but not otherwise defined in this Motion shall have the meanings set forth in the First Day Declaration or the Plan (as defined herein), as applicable.

statements of financial affairs, and, on October 15, 2020, filed a proposed chapter 11 plan of reorganization (the "Plan") and accompanying disclosure statement (the "Disclosure Statement").

3. The Debtors and Lazard Frères & Co. LLC ("Lazard") have also been working to broker a settlement with the RCF Lenders. To that end, in the week following the Court's approval of the debtor-in-possession financing facility on September 25, Lazard arranged calls with the advisors to the RCF Agent, the Ad Hoc Group, and the Creditors Committee to discuss the proposed approach to the settlement process. After those calls, in the following week Lazard held individual interviews with six RCF Lenders and four members of the Ad Hoc Group to determine their views about potential settlement structures. Coming out of those meetings, Lazard worked with the Debtors to develop a restructuring framework that could potentially be acceptable to both the RCF Lenders and the Ad Hoc Group. During this period, Lazard worked to finalize the valuation analysis and assisted the Company with preparing the financial projections. The valuation and projections—key gating items to substantive settlement negotiations—were filed on October 27. The Debtors then worked to arrange for the Ad Hoc Group to become "re-restricted" by signing back up to nondisclosure agreements with a fixed "cleansing date." After nine bondholders signed nondisclosure agreements on November 13, Lazard held calls with the RCF Lender group on the same day and with the Ad Hoc Group on November 16.[3] Lazard then submitted a proposal to the RCF Agent, the Ad Hoc Group, the Creditors Committee, and the Debtors on November 20. The RCF Agent and the Ad Hoc Group submitted counterproposals on November 25. Lazard held multiple calls with the parties involved, and based on the feedback gleaned from those conversations, submitted a revised proposal to the RCF Agent, the Ad Hoc

---

[3] One additional member of the Ad Hoc Group signed a nondisclosure agreement on November 21, 2020.

Group, the Creditors Committee, and the Debtors on December 7, 2020. Lazard remains in ongoing discussions with these parties in an effort to reach a settlement.

4. Notwithstanding the substantial progress made to date, certain tasks remain before the Debtors may emerge from chapter 11. Most pressingly, the Debtors' Disclosure Statement hearing is currently scheduled for December 17, and solicitation must occur thereafter. Simultaneously, the Debtors and their key stakeholders continue to negotiate critical documents required for plan confirmation and emergence, including key settlement, financing, and corporate governance documents. As tasked by the Court at the hearing approving the debtor-in-possession financing facility, the Debtors and their key stakeholders are working constructively to narrow open issues and arrive at consensual resolutions in advance of ultimately seeking Court approval at confirmation. The Debtors will continue their efforts to build consensus surrounding the Plan for the benefit of all stakeholders in these chapter 11 cases.

5. In these chapter 11 cases, the Filing Exclusivity Period and Solicitation Exclusivity Period (each, as defined below) will expire on December 17, 2020 and February 15, 2021, respectively, absent further order of the Court.[4] Accordingly, the Debtors are requesting a 120-day extension of the Exclusivity Periods (as defined below) to file and solicit approval of a chapter 11 plan so that they may continue to diligently pursue and effectuate a value-maximizing

---

[4] To the extent the Exclusivity Periods have not been extended via Court order, the Debtors note that they have filed this Motion prior to the expiration of the current deadline for the Filing Exclusivity Period that would otherwise expire on December 17, 2020—i.e., 120 days following the Petition Date. Pursuant to Section G of the *Procedures for Complex Cases in the Southern District of Texas*, "[u]nless otherwise provided in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or Court order, if a motion is filed that complies with Bankr. Loc. R. 9013-1 to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, the time for taking the action is automatically extended until the Court rules on the motion. An automatic extension under this rule does not require the issuance or entry of an order extending the time."

4

resolution to these chapter 11 cases.[5] The Debtors will use the extended exclusivity periods not only to continue to press forward with confirmation of the Plan, but to work with any parties in interest who do not yet support the Plan in hopes of arriving at a consensual resolution. For these and other reasons discussed below, a 120-day extension of exclusivity is appropriate.

### Relief Requested

6. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), extending the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Filing Exclusivity Period") through and including April 16, 2021, and the deadline under which the Debtors have the exclusive right to solicit a plan of reorganization filed during the Filing Exclusivity Period (the "Solicitation Exclusivity Period" and, together with the Filing Exclusivity Period, collectively, the "Exclusivity Periods") through and including June 15, 2021, without prejudice to the Debtors' right to seek further extensions to the Exclusivity Periods.

### Jurisdiction and Venue

7. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The basis for the relief requested herein is section 1121 of the Bankruptcy Code.

---

[5] For the avoidance of doubt, the relief requested in this Motion shall not modify or affect the milestones set forth in the Restructuring Support Agreement.

**Basis for Relief**

10. A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code. Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional sixty days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan. "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." *In re Burns and Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (internal quotation marks omitted) (quoting H.R. Rep. No. 103-835, at 36 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3344). In these chapter 11 cases, the Filing Exclusivity Period and Solicitation Exclusivity Period will expire on December 17, 2020 and February 15, 2021, respectively, absent further order of the Court.

11. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusive periods to file and solicit a plan "for cause." *See* 11 U.S.C. § 1121(d). Specifically, section 1121(d) provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." *Id.* Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in the context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-04-CV-476-A, 4-04-CV-530-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization.");

6

*see also In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (Bankr. S.D.N.Y.), Hr'g Tr. July 15, 2009, 137: 3–6, 8–11 (finding that it is "beyond reasonable debate that the debtors should be entitled . . . to as much time as they need to develop their best plan" because "exclusivity was designed, in part, to give debtors that privilege, unless it's being abused"); *In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y 2011) (noting that "the court has broad discretion in extending or terminating exclusivity").

12. Courts within the Fifth Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See Mirant*, 2004 WL 2250986, at * 3 (noting that the decision to extend exclusivity "lies within the bankruptcy court's discretion"); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (extending exclusivity based on the totality of the circumstances). In particular, courts within the Fifth Circuit and other jurisdictions examine a number of factors to determine whether there is "cause" for extension of the Exclusivity Periods. These factors include:

(a) the size and complexity of the case;

(b) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(c) the existence of good faith progress toward reorganization;

(d) the fact that the debtor is paying its bills as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress in negotiations with its creditors;

(g) the amount of time which has elapsed in the case;

(h) whether the debtor is seeking to extend exclusivity to pressure creditors to submit to the debtor's reorganization demands; and

(i) whether an unresolved contingency exists.

*In re New Millennium Mgmt., LLC*, No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods) (citing *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596, 600-01 (Bankr. S.D.N.Y. 2014)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (applying the same factors and determining that continuation of exclusivity was warranted).

13. Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g., In re Express One Int'l, Inc.*, 194 B.R. at 100-01 (listing all nine factors later set forth in Adelphia, but determining "cause" to extend exclusivity existed without finding that every factor was met); *see also In the Matter of Excel Maritime Carriers Ltd.*, No. 13-23060-RDD, 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013) (explaining that the relevance of the factors is context-dependent and that "the ultimate consideration for the Court was what will best move the case forward in the best interest of all parties").

14. Although the party seeking an exclusivity extension bears the burden of demonstrating cause, courts have applied a more lenient standard when determining whether to grant a debtor's first exclusivity request. *See Mirant*, 2004 WL, at *2 ("The debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts."); *In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) (noting that during the initial 120-day period in which debtors have an exclusive right to file a chapter 11 plan, "bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied") (quoting 11 U.S.C. § 1121(b), (c)(2)); *see also Borders*, 460 B.R. at 825 (same)).

15. Here, the relevant factors strongly favor an initial extension of the Exclusivity Periods.

## I. The Debtors' Chapter 11 Cases Are Large and Complex.

16. The worldwide scope of the Debtors' operations and size of their capital structure means that the Debtors must navigate a number of complex issues during the chapter 11 process. The Debtors, which currently operate the industry's largest modern offshore drilling rig fleet, maintain recent operations in 24 countries, including drilling operations in nearly every major offshore market. There is no question that the Debtors' capital structure—which as of the Petition Date consisted of approximately $7.1 billion in funded debt obligations across a revolving credit facility, fifteen issuances of publicly-held bonds, and a publicly-traded holding company—is large and complex. The Debtors have obligations to a tremendous number of stakeholders across the globe, including approximately 3,500 employees (excluding contract employees), and thousands of financial stakeholders, government agencies, and contractual counterparties.

17. Moreover, the Debtors have an array of constituents that have taken an active role in their chapter 11 cases, including, among others, the Creditors Committee, the RCF Lenders, and the Ad Hoc Group, as well as each constituent's agents, trustees, and advisors. Administering these cases requires significant input from the Debtors' management team and advisors on a wide range of complicated matters necessary to bring structure and consensus to a large and complex process. In spite of these complexities, the Debtors have made substantial progress towards confirming a plan.

18. Both Congress and courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See In re Express One Int'l, Inc.*, 194 B.R. at 100 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the

concomitant difficulty in formulating a plan of reorganization"). Thus, the size and complexity of these chapter 11 cases alone provides sufficient cause for the Court to extend the Exclusivity Periods.

## II. The Debtors Have Negotiated a Reorganization With a Substantial Number of Their Most Significant Creditors and Have Made Significant Progress Toward Effectuating that Reorganization.

19. Leading up to and since the Petition Date, the Debtors have made substantial progress in negotiating with their stakeholders and administering these chapter 11 cases, which further warrants an extension of the Exclusivity Periods. This progress includes:

(a) ***Entering into the Restructuring Support Agreement***. The Debtors commenced these chapter 11 cases with substantial creditor support for a comprehensive restructuring. This support is embodied in the Restructuring Support Agreement, which has provided a foundation for these chapter 11 cases to date. Since the commencement of these chapter 11 cases, the Debtors have built additional consensus for the Debtors' proposed chapter 11 transactions, resulting in additional holders of senior notes signing joinders to the Restructuring Support Agreement, totaling approximately $1.5 billion of additional bond debt, and amounting to a total of 72 percent of bonds having committed to supporting the Plan.

(b) ***Filing Schedules of Assets and Liabilities and Statements of Financial Affairs***. On October 19, 2020, the Debtors filed their schedules and statements of financial affairs for all 90 Debtor entities. This was a major undertaking for the Debtors in these chapter 11 cases given the scale of their operations and involved the filing of thousands of pages of documentation.

(c) ***Responding to Requests for Formation of an Equity Committee***. The Debtors also expended time and resources responding to the request of individual shareholders of Valaris plc for the formation of an official committee of equity security holders.

(d) ***Obtaining Critical Financial and Operational Relief***. The Debtors stabilized their business operations and achieved a smooth landing in chapter 11 through various forms of operational first- and second-day relief. On September 25, 2020, following extensive discovery and a vigorously contested two-day hearing, the Debtors secured Court approval authorizing the Debtors, on a final basis, to obtain a critical $500 million debtor-in-possession financing facility with a 12-month maturity. That same day, the Debtors entered into the debtor-in-possession financing facility. The facility, which has no milestones and no cross default on

     account of a termination of the RSA, will provide the liquidity needed to stabilize the Debtors' operations and fund the administration of these chapter 11 cases. Moreover, the Debtors obtained critical relief in the form of, among other things, authority to continue to pay employees, pay certain vendors, and continue to use the Debtors' cash management system. The Debtors additionally obtained authority to retain section 327 and ordinary course professionals, established interim compensation procedures, and rejected or moved to reject unnecessary or burdensome unexpired leases.

 (e) ***Filing a Chapter 11 Plan, Disclosure Statement, and Solicitation Package***. Throughout these chapter 11 cases, the Debtors have engaged with the Creditors Committee, indenture trustees, noteholders, contract counterparties, and other constituencies regarding the Debtors' restructuring and plan process. On October 15, 2020, the Debtors filed the Plan, Disclosure Statement, and Disclosure Statement Motion. The Debtors will continue to solicit input from parties in interest with respect to both the Plan and Disclosure Statement. The Debtors intend to proceed with the Disclosure Statement approval hearing scheduled for December 17, 2020 and, subsequently, commence solicitation.

 (f) ***Establishing a Workable Confirmation Schedule***. The Debtors and various stakeholders have reached agreement on a schedule of confirmation dates and deadlines, including certain interim dates and deadlines for discovery and expert reports.

20. The Debtors' substantial progress in working with their creditors and administering their cases to this point support the extension of the Exclusivity Periods. *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (noting that an extension of exclusivity is typically granted where "the debtor has shown substantial progress toward reorganization").

### III. An Extension of the Exclusivity Periods Is in the Best Interest of the Creditors.

21. The Debtors seek to maintain exclusivity so parties with competing interests do not hinder their efforts to finalize a consensual, value-maximizing restructuring. Extending the Exclusivity Periods will permit the Debtors to continue prosecuting their value-maximizing Plan process and will enable the Debtors' stakeholders to realize the benefits of months of hard-fought negotiations. An extension of the Exclusivity Periods will benefit all creditors by preventing the drain on estate assets that inevitably occurs when multiple parties, with potentially diverging

interests, vie for the consideration of their own respective chapter 11 plans. All stakeholders benefit from the continued stability and predictability that a centralized plan process provides, which can only occur while the Debtors remain the sole potential plan proponents.

22. Further, the Debtors have been in extensive communication with all parties in interest to market and improve upon the Plan to the extent possible and will continue such discussions as they seek to build consensus ahead of confirmation. Moreover, even if the Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from later arguing to the Court that cause supports termination the Exclusivity Periods should circumstances arise. Accordingly, an extension of the Exclusivity Periods is in the best interests of the Debtors' estates, their creditors, and all other parties in interest.

### IV. The Debtors Are Not Pressuring Creditors by Requesting an Extension of the Exclusivity Periods.

23. The Debtors' restructuring process is intended to confirm a plan that maximizes the value of the Debtors' estates for all stakeholders. Since the commencement of these chapter 11 cases, the Debtors have worked diligently to evaluate restructuring alternatives and have worked, and will continue to work, constructively with stakeholders to build additional consensus for the Debtors' proposed chapter 11 transactions. The Debtors' exclusivity extension request is not intended to pressure creditors, but to provide sufficient time for the Debtors to confirm the Plan and implement the transactions contemplated thereby without the disruption and distraction created by competing plan proposals. Accordingly, the Debtors are not seeking an extension to pressure their creditors or other parties in interest.

### V. The Debtors Are Paying Their Debts as They Come Due.

24. The Debtors have generally paid their undisputed postpetition debts in the ordinary course of business or as otherwise provided by Court order.

**VI.     Relatively Little Time Has Elapsed in These Chapter 11 Cases.**

25.     Less than four months have elapsed since the Petition Date, and this is the Debtors' first request for an extension of the Exclusivity Periods. During the brief pendency of these cases, the Debtors made significant efforts to bring stability to their operations. The Debtors seek extension of the Exclusivity Periods contemplated herein to conclude discussions with their stakeholders, promptly prosecute the Plan, and proceed toward emergence in an efficient, organized manner. Courts regularly grant a debtor's request for an initial exclusivity extension. The fact that these chapter 11 cases are at a relatively early stage further supports the requested extension.

26.     Accordingly, the facts and circumstances of these cases are more than sufficient to support a finding of "cause" to extend the Exclusivity Periods for an initial 120-day period, so that the Debtors and their stakeholders may realize the benefits of the substantial progress made to date and avoid the risks of any competing plan proposals.

## Notice

27.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Creditors Committee; (c) the administrative agent under the Debtors' revolving credit facility, and its counsel; (d) the indenture trustees for each of the Debtors' unsecured notes, and their respective counsel; (e) the Office of the United States Attorney for the Southern District of Texas; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (j) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (k) any other party entitled to notice

pursuant to Bankruptcy Local Rule 9013-1(d). In light of the nature of the relief requested, no further notice is required.

WHEREFORE, in light of the foregoing, "cause" exists to extend the Exclusivity Periods, and the Debtors respectfully request that the Court enter an order extending the Debtors' Filing Exclusivity Period through and including April 16, 2021, extending the Debtors' Solicitation Exclusivity Period through and including June 15, 2021, and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
December 7, 2020

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Kristhy M. Peguero (TX Bar No. 24102776) | Anup Sathy, P.C. (admitted *pro hac vice*) |
| Genevieve Graham (TX Bar No. 24085340) | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | Spencer A. Winters (admitted *pro hac vice*) |
| Houston, Texas 77010 | 300 North LaSalle Street |
| Telephone: (713) 752-4200 | Chicago, Illinois 60654 |
| Facsimile: (713) 752-4221 | Telephone: (312) 862-2000 |
| Email:  mcavenaugh@jw.com | Facsimile: (312) 862-2200 |
|            kpeguero@jw.com | Email:  asathy@kirkland.com |
|            ggraham@jw.com |            rkwasteniet@kirkland.com |
| | spencer.winters@kirkland.com |
| *Co-Counsel to the Debtors* | |
| *and Debtors in Possession* | *Co-Counsel to the Debtors* |
| | *and Debtors in Possession* |

**Certificate of Service**

I certify that on December 7, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh