United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 06, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-34114 |
| VALARIS PLC, *et al.*, | § | |
|     Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

## AMENDED MEMORANDUM OPINION

This matter concerns the Emergency Motion for Relief from the Discharge and Plan Injunctions filed by Jeffrey Bardwell ("Bardwell"). At the hearing on the Relief Motion, Bardwell offered the testimony of proposed expert Dr. Matthew Hyzy ("Hyzy"). Hyzy testified that, in finding Bardwell's anxiety was caused by an injury on a Valaris rig, he did not consider the impact of Bardwell's marital problems on Bardwell's anxiety. Because Hyzy did not properly account for alternative factors in making his causation diagnosis, Hyzy's testimony is unreliable. Hyzy is excluded from testifying as an expert.

## BACKGROUND

On May 4, 2019, Jeffery Bardwell was allegedly injured on a Debtor-affiliated rig. ECF No. 1392 at 2; ECF No. 1387 at 4. On August 19, 2020, Debtors filed for bankruptcy. ECF No. 1. Stretto, the claims agent for the Bankruptcy Case, served Bardwell with notice of the Petition, the general claims bar date, hearings related to the approval of the disclosure statement and confirmation of the plan, and the effective date. ECF Nos. 222, 611, 658, 745, 893, 946, 1052, 1094, 1260, 1277. Bardwell disputes whether he received the notice. Bardwell did not file a claim before the bar date.

After the effective date of the plan, Bardwell sued Valaris and Ensco Ltd. in state court for the rig injury. ECF No. 1392 at 5; ECF No. 1387 at 6. Valaris and Ensco Ltd. moved to dismiss the state court suit. ECF No. 1392 at 5; ECF No. 1387 at 6.

Bardwell filed an Emergency Motion for Relief from the Discharge and Plan Injunctions in this case to allow him to pursue his state court claims. ECF No. 1387. Debtors filed an Opposition to Jeffrey Bardwell's Emergency Motion for Relief from the Discharge and Plan Injunctions. ECF No. 1392.

Before the hearing on the Relief Motion, Debtors filed the Emergency Motion in Limine to Exclude Expert Testimony to exclude Hyzy's testimony in support of Bardwell's Relief Motion. ECF No. 1431. Hyzy is a medical doctor who was hired to create a life care plan for Bardwell. ECF No. 1444 at 28:18–24. A life care plan outlines future medical care based on the patient's diagnoses. ECF No. 1444 at 32:20–24. Bardwell filed a Response in Opposition to Emergency Motion in Limine to Exclude Expert Testimony. ECF No. 1432.

On November 6, 2023, the Court held a hearing on Bardwell's Relief Motion and allowed Hyzy to begin testifying. ECF No. 1444. Hyzy testified he considers "all information at hand, which includes subjective medical records, imaging studies, the patient reported, symptoms or subjective history, medical history," and an exam with the patient when diagnosing and treating patients. ECF No. 1444 at 54:1–7. Hyzy reviewed Bardwell's medical records and conducted a video conference with Bardwell to create Bardwell's life care plan. ECF No. 1444 at 32:9–13. Hyzy concluded Bardwell suffers from adjustment disorder, anxiety, and depression. ECF No. 1444 at 34:6–8.

In diagnosing Bardwell's physical injury, Hyzy asked Bardwell about "the specific story of the injury [and] . . . how it [a]ffects his life, his symptoms, his function, and . . . his past medical history . . . ." ECF No. 1444 at 57:12–15. But Hyzy did not receive information from Bardwell about his personal life. ECF No. 1444 at 57:20–22. Hyzy did ask whether there were other stressors in Bardwell's life that might cause Bardwell's anxiety. ECF No. 1444 at 57:25–58:3. Bardwell did not mention marital issues. ECF No. 1444 at 58:8–9. Hyzy also did not ask Bardwell about marital issues; he asked about Bardwell's "general past medical history . . . ." ECF No. 1444 at 58:10–14. Hyzy never

discussed Bardwell's relationship with his ex-wife in diagnosing and recommending a treatment plan for anxiety. ECF No. 1444 at 45:8–12. Hyzy also never discussed with Bardwell whether Bardwell's breakup with his ex-wife caused Bardwell's depression. ECF No. 1444 at 45:8–16.

The Court ordered additional briefing on "whether a physician who is going to determine that future anxiety results from one event would be required to inquire about other events that might also cause anxiety." ECF No. 1444 at 60:1–4. The parties submitted additional briefing on December 1, 2023. ECF Nos. 1448; 1449.

Bardwell now, after the hearing, asserts Hyzy "did consider other potential causes of anxiety both before and after the injury Bardwell sustained" and that additional testimony would clarify the "confusion." ECF No. 1448 at 7–8. On November 29, 2023, Hyzy signed a declaration stating he "explored potential causes of Mr. Bardwell's anxiety that could have arisen both before and after the crush injury he sustained on May 4, 2019." ECF No. 1448-1 at 5–6. Hyzy asserted "[i]t is not [his] opinion, nor [has he] testified at any point in this case, that Mr. Bardwell's future anxiety is solely caused by the May 4, 2019, crush injury. Other factors, such as a divorce, death of a person Mr. Bardwell is close with, or otherwise may also cause anxiety. But that does not change the validity of Mr. Bardwell's crush injury causing future anxiety." ECF No. 1448-1 at 6.

After the Court excluded Hyzy's testimony, Bardwell filed a Motion for Reconsideration or Revision of the Court's Order Sustaining Objection to Expert Testimony. ECF No. 1457. The Reorganized Debtors filed a Supplemental Opposition to Bardwell's Motion. ECF No. 1461. Bardwell filed a Reply. ECF No. 1464. The Court held a hearing on the Motion on July 22, 2024. Bardwell asserts the nature of Hyzy's testimony was to testify as to Bardwell's physical injuries, not anxiety. Therefore, Bardwell asserts the Court should not have excluded Hyzy's testimony in its entirety based on Hyzy's diagnosis of anxiety. The Court took the matter under advisement. ECF No. 1466.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

Under Federal Rule of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The party offering the expert testimony "must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore are reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Court must independently assess the expert's methodology because "[t]he expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Id.* "Even if the expert is qualified and the basis of her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts for her testimony to be relevant." *Robinson v. Ethicon, Inc.*, 580 F. Supp. 3d 452, 457 (S.D. Tex. 2022). The proponent

must "prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.

Bardwell asserts Hyzy was "retained to opine on the future medical costs of rehabilitating his crushed hand" and not to testify "as a causation or damages expert for mental anguish damages . . . ." ECF No. 1457 at 4. Bardwell sought to clarify this in his Motion for Reconsideration. ECF No. 1457 at 4–5. But Bardwell did not define that scope during trial. At the hearing on November 6, 2023, Bardwell's counsel stated

> But it's my understanding that part of Mr. Bardwell's claims, that we're seeking to assert here, are maintenance and cure claims, which will extend on. And the limitation period for those claims arises -- if the time that he needs additional treatment, he's needs additional therapy, additional surgeries, and that's what Mr. Hyzy is going to testify to today. So that's number one.

ECF No. 1444 at 25:16–22. Counsel did not limit the scope to additional treatment for only physical injuries. Instead, Bardwell's counsel indicated that Hyzy would testify as to additional treatment including "additional therapy." ECF No. 1444 at 25:20–21. When Hyzy began testifying, he stated

> I'm also a physician life care plan and that is what I've been retained for in this case. To review the medical documents, perform an examination and follow my methodology to then produce a life care plan objectively identify the injuries, future care and plan for Mr. Bardwell.

ECF No. 1444 at 28:20–24. Hyzy also testified, on direct, that he made nine different diagnoses. ECF No. 1444 at 33:18–21. Bardwell's counsel specifically asked "what are those nine diagnoses?" ECF No. 1444 at 33:22. Bardwell listed several physical injuries and then indicated he also made "a psychological diagnosis of number one, adjustment disorder to the need physical diagnosis. Number two, anxiety. Number

three, depression." ECF No. 1444 at 33:23–34:8. Bardwell then offered Hyzy "as an expert witness in respect to Mr. Bardwell's medical needs [in] the present and in the future." ECF No. 1444 at 39:7–9.

Bardwell now wishes to narrow Hyzy's testimony. Bardwell did not narrow the testimony to only physical injuries at trial. And when the Court indicated it had a question as to the credibility of Hyzy's anxiety diagnosis, Bardwell did not indicate that Hyzy was not offered to testify to anxiety, only physical injuries. Hyzy's direct testimony and the reasons for which Hyzy was offered placed the issue of Hyzy's diagnosis of anxiety squarely before the Court. The Court may consider Hyzy's diagnosis of Bardwell's anxiety in its assessment of Hyzy's testimony's admissibility.

"An expert who is trying to find a cause of something should carefully consider alternative causes." *Guzman v. State Farm Lloyds*, 456 F. Supp. 3d 846, 853 (S.D. Tex. 2020) (quoting *E.I. du Pont de Nemours and Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex. 1995)). A medical causation expert does not need to discount every possible other cause, but they do need to at least have considered and excluded other potential causes. *Lilley v. Home Depot U.S.A., Inc.*, 567 F. Supp. 2d 953, 957, 959 (S.D. Tex. 2008) (expert testimony was admissible when the expert had no knowledge of previous injuries, and thus did not consider them as potential causes in the case, because the expert was able to distinguish those prior injuries' symptoms from the symptoms of the injury in question); *cf. Guzman*, 456 F. Supp. 3d at 853 (expert's testimony was inadmissible when the expert did not consider other potential causes of the damage).

This means the expert "must be aware of the plaintiff's pertinent medical history" to evaluate potential causes. *McNabey v. Lab'y Corp. of Am.*, 153 Fed. Appx. 293, 295 (5th Cir. 2005). Pertinent medical history does not necessarily include all medical history. *See Perez v. Boecken*, No. SA-19-CV-00375, 2020 WL 3074420, at *7 (W.D. Tex. June 10, 2020) (expert's failure to consider two prior accidents in determining causation did not make their testimony inadmissible because plaintiff

did not experience symptoms after the accidents and the accidents were remote in time). For instance, an expert's opinion about the cause of hypertension and depression may be unreliable if the expert is not aware of critical medical history, such as a family history of hypertension and depression. *Viterbo v. Dow Chem. Co.*, 826 F. 2d 420, 423 (5th Cir. 1987) (the failure to use a complete medical history was "particularly damaging to the reliability" of the expert because the history could also be a cause of the symptoms).

One factor in considering whether an opinion is reliable is "whether the expert has adequately accounted for obvious alternative explanations." Fed. R. Evid. 702 advisory committee's notes to 2000 amendment; *Whitney Nat'l Bank v. Air Ambulance by B&C Flight Mgmt.*, Inc., 516 F. Supp. 2d 802, 816 (S.D. Tex. 2007). But the reliability test is flexible, so the Court "has latitude to decide how to determine reliability as well as make the ultimate reliability determination." *See Whitney Nat'l Bank*, 516 F. Supp. 2d at 816.

The issue before the Court is not whether Hyzy is qualified by education, experience, and skill. It is whether Hyzy reliably applied the standard principles and methods of the practice. The Court must determine whether it is accepted medical practice to not explore other potential causes of anxiety before expressing views about anxiety.

Both parties agree that an expert should consider other potential causes of their diagnosis before making the diagnosis. ECF No. 1448 at 18–19 ("The Court's specific question was whether or not a physician who is going to determine that future anxiety results from one event would be required to inquire about other events that might also cause anxiety. The short answer is, yes, when diagnosing anxiety and providing future treatment for that anxiety, physicians consider alternative causes of the anxiety, which Dr. Hyzy did."); ECF No. 1449 at 3 ("Medical Experts, Such As Dr. Hyzy, Are Required To Rule Out Possible Alternative Causes"). This is also supported by caselaw. *See e.g., Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 760–61 (N.D. Tex. 2021); *Villanueva v. Wal-Mart Stores Tex., LLC*, No. 5:21- CV-

35, 2023 WL 1069306, at *3 (S.D. Tex. Jan. 6, 2023); *see also Cannon v. BP Products N. Am., Inc.*, No. 3:10-CV-00622, 2013 WL 5514284, at *10 (S.D. Tex. Sept. 30, 2013) (excluding expert's conclusion on a specific issue in part because the expert failed to account for major explanatory variables in their regression); *see also Munafo v. Metro. Transp. Auth.*, *Nos.*, 98- CV-4572, 00-CV-0134, 2003 WL 21799913, at *18–19 (E.D.N.Y. Jan. 22, 2003) (in diagnosing the causation of depression, the expert must have "conducted a meaningful 'differential diagnosis' ruling out other possible contributing factors" (internal citations omitted)); *Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 10609878, at *3 (N.D. Ill. Mar. 20, 2018) (excluding expert testimony on causation when the expert failed to ask about alternative causes and the patient did not provide any information on alternative causes).

While "the basis of an expert's opinion usually goes to the weight, not the admissibility, of the testimony," this is not true if the basis is so weak that the testimony itself cannot actually help the trier of fact in reaching a finding. *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012). Experts can rely on statements provided by patients in coming to their diagnosis. *Lilley*, 567 F. Supp. 2d at 957.

At the November 6 hearing, opposing counsel asked Hyzy whether he considered Bardwell's relationship with his wife when making his diagnosis:

> Q. You had issues, additionally, with regard to his anxiety and depression and things of that nature. Did you go into him his relationship with his ex-wife?
>
> A. No, sir. That was not something that we discussed. That's not typically part of my objective medical record review for this, sir.
>
> Q. Couldn't a breakup be a cause for depression?
>
> A. That's something that I'm not prepared to opine on. I didn't have that discussion with Mr. Bardwell.

ECF No. 1444 at 45:8–16. The Court also asked Hyzy about and expressed concerns regarding Hyzy's testimony that he did not examine other causes:

> THE COURT: So Dr. Hyzy, I was surprised on the psychological issue that you were unaware of other potential causes of psychological issues. Is that because you asked about them and were told they didn't exist? Is it because they don't exist or is it because you didn't ask about them? I think there's -- and maybe there's a fourth alternative. But those are the only three I can think of.
>
> THE WITNESS: Yes, Your Honor. When I'm going through my process for the left wrist crush injury, I'm asking the specific story of the injury. Thereafter, I'm asking how it effects his life, his symptoms, his function and then his past medical history as well. So when a patient tells me that about having anxiety from a divorce or an ex-girlfriend or prior PTSD, then that's when they will tell me in the past medical history. So that's how I asked it to the client or the patient, Mr. Bardwell, and there was not information provided to me about his personal life. Even so, I have a thought about that regarding this question (indiscernible) objected events that he had of his impairment.
>
> THE COURT: So did you ever directly ask him whether there were other stresses in his life that might [a]ffect his level of anxiety and stress?
>
> THE WITNESS: I did. We talked about his work history regarding decreased ability to lift.
>
> THE COURT: No, that was a simple question. So you did ask him about that. Did he mention any marital issues to you in response to that question?

> THE WITNESS: He did not mention marital issues, Your Honor.
>
> THE COURT: Okay. And did you ask him about marital issues?
>
> THE WITNESS: No, sir, I did not. I asked him the general past medical history, past psychological history were these symptoms present before the crush injury.

ECF No. 1444 at 57:4–58:14. In response to the Court's request for briefing, Bardwell submitted a declaration written by Hyzy stating

> During my evaluation of Mr. Bardwell, I personally observed his range of motion and discussed in detail how his physical injuries had affected his life. As part of this discussion, I explored potential causes of Mr. Bardwell's anxiety that could have arisen both before and after the crush injury he sustained on May 4, 2019. Based on this conversation, I was able to consider potential alternative causes for the future anxiety I expect Mr. Bardwell to endure.

ECF No. 1448-1 at 5–6. But Hyzy does not get to change his testimony from the hearing by submitting the declaration. It is clear Hyzy did not consider Bardwell's marital problems in reaching his diagnosis of Bardwell's anxiety. But it is unclear whether Hyzy considered any other factors. Whether Bardwell was having marital problems that could contribute to his anxiety is an obvious alternative factor that Hyzy should have considered. And while Hyzy does not need to rule out all other causes of Bardwell's anxiety, Hyzy was responsible for considering an obvious alternative factor like marital problems. Hyzy's diagnosis should have involved, at minimum, asking about more than general medical history. Hyzy could have specifically asked about, for instance, relationship issues, family stressors, or other life problems.

Expert conclusions based on incorrect assumptions may be unreliable. *See Whitney Nat'l Bank*, 516 F. Supp. 2d at 817. Bardwell's failure to tell Hyzy about the marital problems does not change the fact that Hyzy did not account for the alternative cause in his diagnosis of anxiety. Whether it was Hyzy's application of his methodology, or his insufficient bases for producing a reliable conclusion, Hyzy's failure to consider this obvious alternative factor makes Hyzy's opinion unreliable. *See Fair*, 669 F.3d at 607 (5th Cir. 2012) (when the basis of an expert's testimony is so weak it cannot help the trier of fact in reaching a finding, it may be inadmissible).

Because "[a]n expert's testimony must be reliable at each and every step or else it is inadmissible," Hyzy's entire expert testimony is inadmissible. *See Carlson v. Bioremedi Therapeutic Sys. Inc.*, 822 F.3d 194, 201 (5th Cir. 2016) (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007)).

The Court must determine whether Hyzy's process of determining Bardwell's future medical needs nevertheless qualifies him to opine on some future needs. The testimony reflects that Hyzy never examined Bardwell in person. ECF No. 1444 at 41:10. He did interview him by video, but (as set forth above) failed to follow appropriate medical protocol in reaching psychological conclusions about Bardwell. Hyzy's testimony indicates that he was unable to complete a full physical examination to determine Bardwell's future impairments. For example, Hyzy was unable (because of the video-only examination) to test Bardwell's wrist reaction when he was pushing, measure his abduction and adduction, measure his grip, measure his sensation, or measure his joint tenderness. ECF No. 1444 at 42:21–43:19. Despite these severe limitations, Hyzy contended that he could project Bardwell's physical needs for the balance of his natural life.

As the Court indicated at the hearing, if a physician is willing to give testimony about one area of his supposed expertise and does so in a remarkably unprofessional manner, it raises serious questions as to whether the physician is qualified to give any testimony. Based on

Hyzy's lack of rigor with respect to his psychological analysis, and his willingness to reach conclusions on long term physical limitations without any meaningful examination, the Court concludes that Hyzy is not qualified under Daubert.

## CONCLUSION

The Court's Order Sustaining Objection to Expert Testimony issued on April 24, 2024 (ECF No. 1454) stands.

SIGNED 08/06/2024

_____
Marvin Isgur
United States Bankruptcy Judge