United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 04, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-34114 |
| VALARIS PLC, *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

Jeffrey Bardwell seeks relief from plan discharge and injunction to assert his personal injury and maritime tort claims against Valaris. Bardwell only seeks *in personam* claims so that he may pursue insurance coverage. Bardwell's basis for relief from discharge is the "insurer exception," which allows a creditor to seek nominal liability against an insured debtor.

Bardwell asserts that he did not receive adequate notices of the bankruptcy case.

Relief from plan discharge and injunction is denied because the insurer exception does not apply. Bardwell received adequate notices of the bankruptcy case. Bardwell's *in personam* claims are discharged and he is prohibited from further pursuit of the discharged claims.

## BACKGROUND

### I. FACTUAL HISTORY

Bardwell's personal injury and maritime tort claims arose during his employment with Valaris, PLC and ENSCO Inc. On May 4, 2019, Bardwell allegedly suffered injuries to his wrist, arm, and other parts of his body while working on a Valaris-affiliated offshore rig near Abu Dubai.

On August, 19, 2020, Valaris, PLC and ENSCO, Inc. filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Southern District of Texas. ECF No. 1387.

On August, 20, 2020, the Court issued Official Form 309F1 (*Notice of Chapter 11 Bankruptcy Case*). ECF No. 1392-1. The Notice identifies December 23, 2020 as the deadline for non-governmental creditors to file a proof of claim. ECF No. 1392-1. Bardwell did not file a proof of claim by the bar date.

On March 3, 2021, the Court entered its order confirming Valaris' fourth amended joint chapter 11 plan of reorganization. ECF No. 1392. The Confirmation Order discharged all prepetition claims, besides certain claims expressly preserved in the Plan, against Valaris. ECF No. 1392. Article III(A) of the Plan provides:

> Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise expressly provided in the Confirmation Order, the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof

of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge and release of all Claims and Interests subject to the occurrence of the Effective Date.

ECF No. 1392 at 3–4.

The Plan enjoins recovery from Valaris and other affiliated debtors on any discharged claim. Article VIII(E) of the Plan provides:

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

ECF No. 1410-10 at 42.

On October 22, 2021, Bardwell filed a lawsuit against Valaris, PLC and ENSCO, Inc. in Texas District Court for the County of Harris. The lawsuit asserts tort claims arising out of Bardwell's alleged May 4, 2019 injuries. ECF No. 1387-1 at 3–6.

On November 18, 2021, Valaris filed a motion to dismiss the State Court Lawsuit on the basis that Bardwell's claims were discharged by the Court's Confirmation Order. ECF No. 1387.

## II. PROCEDURAL HISTORY

On December 20, 2022, Bardwell filed his *Emergency Motion for Relief from the Discharge and Plan Injunctions*. ECF No. 1387.

On January 4, 2023, Valaris filed its *Opposition to Jeffrey Bardwell's Emergency Motion for Relief from the Discharge and Plan Injunctions*. ECF No. 1392.

On January 5, 2023, the Court held a hearing on Bardwell's *Emergency Motion for Relief from the Discharge and Plan Injunctions*. ECF No. 1398. The Court overruled Valaris' objection and preserved Bardwell's claims for statute of limitations purposes. ECF No. 1402.

On February 23, 2023, Valaris filed its *Supplemental Opposition to Jeffrey Bardwell's Emergency Motion for Relief From the Discharge and Plan Injunctions.* ECF No. 1416.

On October 30, 2023, Bardwell filed his *Reply in Support of Emergency Motion for Relief from the Discharge and Plan Injunctions*. ECF No. 1430. Valaris filed its reply on November 3, 2023. ECF No. 1438.

On November 15, 2024, the Court held an evidentiary hearing on whether Bardwell received adequate notice of Valaris' bankruptcy case. ECF No. 1477. The Court took the matter under advisement on the same date.

On November 21, 2024, Valaris filed its *Motion in Limine to Exclude Evidence Regarding the Reorganized Debtors' Administration of Third-Party Insurance Claims*. ECF No. 1486.

On December 12, 2024, Bardwell filed his *Response in Opposition to Debtor's Motion in Limine to Exclude Evidence Regarding the Debtors' Administration of Third-Party Insurance Claims*. ECF No. 1487.

On January 16, 2025, Valaris filed its Reply. ECF No. 1489.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

The November 15, 2024, evidentiary hearing established that Bardwell cannot seek relief from the Plan Discharge and Injunction because the insurer exception does not apply. Bardwell received adequate notices of the bankruptcy case to bind him to the Plan.

Bardwell's motion in limine is moot.

### I. RELIEF FROM PLAN DISCHARGE AND INJUNCTIONS

Bardwell seeks relief from the Plan Discharge and Injunctions to adjudicate his maritime tort claims nominally against Valaris to collect any proceeds from insurance policies providing coverage for the claims. ECF No. 1387.

Section 524 shields a debtor from personal liability on claims that are discharged in bankruptcy. 11 U.S.C. § 524; *In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993). The debt itself is not extinguished, but the discharge acts as an injunction against any action pursued by creditors to recover on a claim against the debtor. *See In re Edgeworth*, 993 F.2d at 53. Section 524(a) does not prevent a creditor from seeking payment

of a claim from a debtor's liability insurer by pursuing an action against the debtor for nominal liability. *Id.* at 54 ("Section 542(a)(2) enjoins only suits to "collect, recover or offset" a debt as the "personal liability of the debtor," a phrase that has been interpreted to exclude mere nominal liability.). This is the " insurer exception" to discharge.

Here, access to Valaris's insurance coverage requires satisfaction by Valaris of a large self-insured retention ("SIR") payment. The SIR requires Valaris to cover both defense and liability payments before insurance coverage is invoked. ECF No. 1392 at 6. A policy subject to an unexhausted SIR does not fall into the insurer exception.

In *In re Tailored Brands, Inc.*, this Court held that § 524(a)'s discharge injunction precluded a creditor from establishing the debtor's nominal liability to reach the proceeds in the debtor's employment insurance policy. 2021 WL 2021472 (Bankr. S.D. Tex. May 20, 2021). The policy contained an SIR which required the debtor to incur $500,000 before coverage took effect. *Id.* at *5. The debtor expended $321,000 defending the creditor's claims and left $179,000 of the SIR unexhausted. *Id.* This Court denied the application of the "insurer exception" because allowing the creditor to proceed would expose the debtor to personal liability. *See id.* at *3 ("In a proceeding against a discharged debtor, a claimant may not recover damages from the debtor directly, nor force the debtor to incur "substantial" defense costs.").

Similarly here, the insurance policy requires Valaris to contribute up to $10 million for each occurrence, subject to an aggregate SIR of $20 million. ECF No. 1392 at 6. A claim from one occurrence must exceed $10 million to be counted towards the aggregate SIR. ECF No. 1491 at 170. Before the insurance policy covers any claim amount, both the $10 million SIR for the individual occurrence and the aggregate $20 million SIR must be exhausted. ECF No. 1491 at 170; ECF 1474-1 at 27. The SIR is inclusive of defense costs.

Valaris alleges that it has paid the following amounts in connection to Bardwell's May 2019 injury:

- $354,155.73 in legal fees for defending Bardwell's claim in state and federal court. ECF No. 1392 at 6.

- approximately $160,000 for maintenance and cure. ECF No. 1491 at 171.

- approximately $114,000 for medical expenses. ECF No. 1491 at 171.

Valaris must incur another $9.4 million to meet the SIR requirement for Bardwell's claim. Bardwell does not challenge the presence of this huge SIR hurdle to coverage.

In addition to the unexhausted SIR for Bardwell's claim, the $20 million aggregate SIR has not been exhausted. There were 53 claims made on the policy applicable to Bardwell's injury. ECF No. 1474-2. None of the claims reached the $10 million per occurrence threshold to account towards the aggregate SIR. Not only must Valaris incur $9.4 million in personal liability for Bardwell's claim, but it also must incur an additional $20 million in aggregate claims before the policy covers any amount of Bardwell's claim.

Therefore, granting Bardwell relief from discharge to pursue his claim against Valaris would run counter to the purpose of the insurer exception. *See In re Tailored Brands, Inc.*, 2021 WL 2021472, at *3 ("An application of the insurer exception must be predicated on the debtor's complete insulation from any interference with its fresh start in economic life.").

The Court will not grant Bardwell relief from the Plan discharge and injunction on this basis.

## II. THE BANKRUPTCY NOTICES

The next issue is whether Bardwell received sufficient notices in this chapter 11 case to bind him to the Plan's discharge and injunction.

"A creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice." *In re Robintech, Inc.*, 863

F.2d 393, 396 (5th Cir. 1989), *cert denied*, 493 U.S. 811 (1989). Creditors in a bankruptcy case are protected by due process, which requires notices of events in a bankruptcy case that could adversely affect their rights. Due process requires that notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Known creditors must be given notice of the bankruptcy proceedings and relevant bar dates. *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953). Correctly mailed notice creates the common law presumption that proper notice was given. *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 735 (5th Cir. 1995) (quoting *In re Schepps Food Stores, Inc.*, 152 B.R. 136, 139 (Bankr. S.D. Tex. 1993)). The question is "whether the sender properly mailed the notice and not whether the intended recipient received it." *Id.* at 735. Notice of the bar date is reasonably calculated for due process purposes, if it was sent "by First Class U.S. Mail to the last known address of a creditor . . . ." *Id.* at 736.

To rebut the presumption, the challenger must provide evidence that notice was never mailed. *Id.* at 735. "To determine if a mailing was accomplished the courts may consider whether the notice was correctly addressed, whether proper postage was affixed, whether it was properly mailed, and whether a proper certificate of service was filed." *Id.* at 735–36. Mere denial of receipt of notices does not sufficiently rebut the presumption. *Id.*; *Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 106 (D.N.J. 1993).

The Court held an evidentiary hearing on whether Bardwell received adequate notice. Valaris offered a spreadsheet summarizing the notices that were sent to Bardwell at his known addresses. ECF No. 1474-13. The spreadsheet allegedly incorporated metadata from Valaris' claims agent, Stretto. ECF No. 1489. The spreadsheet details the notice mailed, the date it was sent, which address(es) the notice was

sent to, and links to the corresponding certificate of service as proofs of service. ECF No. 1474-13. Bardwell allegedly received the following notices at 970 East Summit Dr. and 1108 Lakeshore Drive:

- Notice of Chapter 11 Bankruptcy Case

- Notice of Deadlines for Filing of Proofs of Claim, Including Requests for Payment Pursuant to Section 503(b)(9) of the Bankruptcy Code

- Notice of Reset Hearing on Debtors' Motion Approving the Adequacy of the Disclosure Statement

- Notice of Continued Hearing on Debtors' Motion Approving the Adequacy of the Disclosure Statement

- Notice of Hearing to Consider Confirmation of the Joint Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines

- Notice of Non-Voting Status to Holder of Unimpaired Claims Conclusively Presumed to Accept the Plan

- Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization

- Notice of Occurrence of the Effective Date of the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization.

ECF No. 1474-13. On May 19, 2021, Bardwell was served another *Notice of Occurrence of the Effective Date of the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* at his current Leah Street address. ECF No. 1474-13.

Bardwell contests that Valaris lacks contemporaneous evidence of these notices being sent to him at the East Summit Drive address, citing the redaction of addresses in the certificates of service filed with this Court. The addresses were redacted for confidentiality purposes so that the public record would not reflect an individual creditor's personal

information. When Valaris produced unredacted versions of the certificates of service displaying the addresses that received notice, Bardwell argued that the certificates were fabricated after the fact. Bardwell claims that none of Valaris' witnesses have personal knowledge that notice was mailed to Bardwell. ECF No. 1487 at 6.

Bardwell's central argument pertains to purported discrepancies between the produced certificates of service in this litigation. However, Bardwell does not provide any evidence beyond such discrepancies that Valaris and Stretto sent notices to the wrong address.

Valaris' evidence at trial created the presumption that notice was mailed properly. Valaris elicited testimony from Stretto's managing director, James Sean McGuire, who has personal knowledge of Stretto's procedures in sending notices in bankruptcy cases. Mcguire testified how debtors provide the addresses of parties in interest to Stretto, which imports the address data to its case management software, relies on the data to generate service lists, and mails out notices to the corresponding addresses. ECF No. 1489 at 2. In this case, Mcguire testified that Valaris provided Stretto with Bardwell's East Summit Drive address, which was imported into the software and was used for all mailings to Bardwell until May 2021, when Bardwell changed his mailing address to the Leah Street address. His testimony is corroborated by a photograph of an envelope addressed to Jeffrey Bardwell at 970 East Summit Drive from Stretto on behalf of Valaris. ECF No. 1474-10. Affixed to the envelope is a "Return to Sender" sticker with a forwarding address to 104 Leah Street. ECF No. 1474-10. The "MRF" code identifies the letter as the Notice of Effective Date of the Plan. ECF No. 1491 at 238.

Additionally, ENSCO, Inc. routinely sent biweekly maintenance and cure checks to the East Summit Drive address from June 2019 to May 2021. ECF No. 1491 at 17. Bardwell's testimony at the hearing confirms receipt of these checks at East Summit Drive. ECF No. 1491 at 17. Notice was sent to the correct address.

Bardwell attempts to rebut the presumption by arguing that Valaris has provided contradictory evidence of where notice was delivered throughout this litigation. Bardwell cites to an email chain between the parties' attorneys. The email sent on November 17, 2022 purports to represent that Stretto was noticing Bardwell at his Leah Street address. ECF No. 1414-8 at 2; 1415-1 at 7. But this email does not rebut the presumption created by photographic evidence and Stretto's testimony at the hearing. The email was from November 2022, a year after Bardwell sold his East Summit Drive property and changed his mailing address to 104 Leah Street. The email merely reflected his current mailing address. It does not create a conflict with the evidence of the mailed notices.

The preponderance of the evidence heavily weighs in favor of Valaris. The Court finds that notice was correctly mailed. Bardwell is bound to the Plan discharge and injunction.

### III.    VALARIS' MOTION IN LIMINE IS MOOT

Valaris seeks to exclude evidence regarding its treatment of other personal injury claims by third party employees. ECF No. 1486.

The burden is on the movant to show reason why the evidence should be excluded. See *F.D.I.C. v. Wheat*, 970 F.2d 124, 131 (5th Cir. 1992). "The trial court must weigh the evidence's contribution to the case against any potential prejudice or confusion." *Id.*

In support of its Motion, Valaris states that evidence regarding treatment of a third party's insurance claim has "little to no bearing" on whether the claim of another person was treated properly. ECF No. 1486 at 2.

In its Response, Bardwell argues that such evidence is relevant to determine that the Plan terms excepted from discharge employment-related obligations that the Debtors assumed, including honoring insurance obligations, and paying for Jones Act and maintenance and cure claims. ECF No. 1487 at 2. Bardwell believes that his maintenance and cure claims were preserved by the Plan. Article IV(N) of the Plan provides:

> Except as otherwise provided in the Plan or the Plan Supplement, on the Effective Date, subject to any Final Order and, without limiting any authority provided to the New Valaris Holdco Board under the Debtors' respective formation and constituent documents, the Reorganized Debtors shall (1) amend, adopt, assume, and/or honor in the ordinary course of business any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for among other things, compensation, including incentive plans, retention plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation Insurance Policies, supplemental executive retirement benefits, change-in-control agreements, and accidental death and dismemberment Insurance Policies for the directors, officers and employees of any of the Debtors who served in such capacity before and after the effective date of the Restructuring Support Agreement; and (2) honor, in the ordinary course of business, Claims of the employees employed as of the Effective Date for accrued vacation time arising prior to the effective date of the of the Restructuring Support Agreement and not otherwise paid in the ordinary course of business or pursuant to a court order. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, the Reorganized Debtors shall continue to pay and honor all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, in accordance with applicable law. For the avoidance of doubt, nothing herein shall impact or impact the ability of New Valaris Holdco (or its subsidiaries) or Reorganized Valaris to amend, modify, or terminate such arrangements in accordance with their terms following the Effective Date.

ECF No. 1410-10 at 42.

The Court finds that evidence of how Valaris adjudicated personal injury claims from third party persons is irrelevant to Bardwell's case. The Court will not consider Valaris' conduct in treating other third

party's claims when the Plan's language is unambiguous. The Plan required Bardwell to file a proof of claim before the bar date for any claims from his May 2019 injury. Article IV(N) does not affect Bardwell's duty to file a proof of claim. Bardwell received adequate notices of the bankruptcy deadlines, failed to file a proof of claim by the deadline, and did not object to confirmation of the Plan at the confirmation hearing. The Plan discharged his claims against Valaris.

Inasmuch as the claims were discharged, the treatment that may have been given to other claimants is not relevant to any issue before the Court. The question is moot.

## CONCLUSION

A separate order will be entered.

SIGNED 02/04/2025

_____
Marvin Isgur
United States Bankruptcy Judge